IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE R. BARTONICO,<br><br>    Plaintiff,<br><br>  v.<br><br>SEARS HOME IMPROVEMENT PRODUCTS, INC.<br><br>    Defendant.      / | No. C 08-04667 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

On December 18, 2009, the Court heard oral argument on defendant's motion for summary judgment. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court GRANTS IN PART and DENIES IN PART defendant's motion.

**BACKGROUND**

Plaintiff Rose Bartonico is a female California citizen residing in Alameda County who was employed by defendant Sears Home Improvement Products, Inc. ("Sears") from September 2002 to November 2006. Sears is a New York corporation engaged in the business of sales and installation of home improvement products, having its principal place of business in Illinois. Plaintiff worked for Sears as a project consultant ("consultant" or "sales representative"), which is a commissioned sales position. Plaintiff's primary duties as a consultant included visiting homes of prospective customers in the Northern California area for the purpose of consulting with them concerning home improvement products and services offered by Sears, and preparing contracts for the purchase of such products and services.

Plaintiff was hired and supervised by Mike Hoffman ("Hoffman"), who was the district sales manager and/or metro sales manager ("sales manager") of Sears' Sacramento district sales office from 2002 to 2007. As the sales manager, Hoffman was in charge of hiring and supervising consultants in the Northern California area. Hoffman received a list of scheduled appointments with potential customers ("sales leads") from Sears' appointment center, and was responsible for allocating the sales leads to his consultants. In turn, a consultant would visit a potential customer according to the sales leads assigned to him/her, present Sears' products and services to the potential customer, and prepare a contract for the purchase of such products and services if successful in making a sale.

Sears has a set of written Standard Operating Procedures ("SOP") that defines and regulates the procedures for processing the sale of Sears' home improvement products and services. SOP, Ex. 1 to Hoffman Decl. (Docket No. 24-1). The SOP provides for an initial visit discount ("IVD") of ten percent off the quoted sales price for a customer who decides to purchase Sears' products or services during the initial sales visit. Hoffman Decl. ¶13. The SOP bars a consultant from giving an IVD to a customer who decides to sign a sales contract on another day after the initial sales visit. Sears refers to such a customer as "be back." SOP 19. In contrast, the SOP allows a consultant to give an IVD to a customer who decided to purchase Sears' products or services during the initial sales visit but for some reason did not actually sign a contract on that day. Sears refers to such a customer as "put back." *Id.* The SOP further states that any violation of its policies will subject an employee to termination. *Id.* After the initial visit with a potential customer, a consultant is required to turn in a "lead sheet" that reflects the result of the visit. Among the ways to explain the result of the visit is (1) "Sale," meaning a sale was made to the customer during that visit, and (2) "SNS" ("Sit No Sale"), meaning no sale was made during that visit. Hoffman Decl. ¶14.

On June 6, 2006, plaintiff visited the home of Kurt and Sandy Hoglund ("Hoglunds") and proposed a sales price for a kitchen remodel. The Hoglunds did not agree to proceed with the sale that day, and the following morning, plaintiff submitted a lead sheet reporting the result of her initial visit to the Hoglunds as "SNS." Bartonico Decl. ¶6 (Docket No. 32). At some time thereafter, the Hoglunds

agreed to make the purchase.[1] Under the SOP, the Hoglunds would be categorized as a "be back" and would not be entitled to an IVD since they did not decide to proceed with the sale on June 6, 2006, the date of the initial visit. Nevertheless, plaintiff had the Hoglunds sign a sales contract dated June 6, 2006, and gave them the IVD.

In October 2006, Hoffman and his immediate supervisor, Tom Franks ("Franks"), conducted an investigation on their consultants' practice of backdating contracts in violation of the SOL. The investigation was initiated by Sears' suspicion that one of Hoffman's consultants, Ken Small ("Small"), was backdating his contracts in an attempt to receive full commissions for his sales. Hoffman discovered records of sales to certain customers purportedly made by Small on the date of his initial visits to these customers even though the lead sheets submitted by Small for these customers indicated that the initial visits resulted in "SNS." Based on this evidence, Hoffman concluded that Small had backdated his contracts in violation of the SOP, and terminated Small's employment on October 26, 2006. During this investigation, Hoffman also discovered that the sales contract prepared by plaintiff for the Hoglunds was dated June 6, 2006 even though plaintiff's lead sheet for the Hoglunds indicated that her initial visit on June 6, 2006 resulted in "SNS." After confronting plaintiff with the evidence on October 31, 2006, and discussing the matter with Kathy Hibbison ("Hibbison"), Sears' human resources director, Hoffman concluded that plaintiff also violated the SOP, and terminated her employment on November 3, 2006. The termination papers for plaintiff describe the reason for her termination as follows:

> Rose Bartonico violated company policy by going back to a customer, after the initial visit, and offering the IVD, Initial Visit Discount. Rose back dated the contract, trying to manipulate the system, so that it would show that the sale was made for the original appointment date, which paid her full commissions. Instead of this sale being placed as BE BACK, they were [sic] put into the computer as a PUT BACK, due to the manipulated contract date, IVD was allowed illegally. This happened on the following job, Hoglund #5741526, whom I called to verify the date she returned to write the contract, I was told a couple of days after the first visit. Rose did admit this and agreed that she was in violation of policy.

---

[1] The exact date the Hoglunds agreed to proceed with the sale and sign the contract is not clear from the records. Plaintiff states that the Hoglunds told her they wished to make the purchase the next day, on June 7, 2009. Bartonico Decl. ¶6. Although Sears does not directly challenge this assertion, Hoffman states that he confirmed with the Hoglunds that they signed the contract approximately a week after plaintiff's initial visit. Hoffman Decl. ¶20.

3

Ex. 6 to Hoffman Decl.

On October 31, 2007, plaintiff filed a lawsuit against Sears, Hoffman, and Does 1 to 20 in the Alameda County Superior Court, Case No. RG07354258, alleging: (1) sex discrimination in violation of the Fair Employment and Housing Act; (2) sex discrimination in violation of public policy; and (3) defamation. On September 29, 2008, plaintiff voluntarily requested the dismissal of her claims against Hoffman with prejudice, and filed a First Amended Complaint ("complaint") dropping Hoffman from the case. On October 6, 2008, Sears removed the case to this Court invoking federal diversity jurisdiction under 28 U.S.C. §§1332(a) and 1441(a). On September 21, 2009, Sears filed a motion for summary judgement based on grounds that there is no triable issue of material fact to any of plaintiff's claims. This motion is now before the Court.

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id*. at 255. "Credibility

4

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

Plaintiff does not oppose Sears' motion for summary adjudication on her first and second causes of action for sex discrimination; the parties only dispute whether plaintiff's third cause of action for defamation can be summarily adjudicated. Accordingly, the Court will limit its analysis to plaintiff's defamation claim.

Plaintiff alleges that Sears defamed her by "publishing orally and in writing to numerous third parties the false statements that Plaintiff was performing her duties in an unreliable and erratic fashion, and dishonestly gave the discount to [the Hoglunds] in order [] to increase her own commission from the sale." Comp. ¶31, Ex. F to Notice of Removal (Docket No. 1). Specifically, plaintiff's defamation claim is based on the following: (1) Hoffman and Franks' statements about plaintiff's misconduct during a telephone conversation with Hibbison after they had confronted plaintiff; (2) Hoffman's statement in the termination papers that plaintiff had "manipulated the system" for her own gain, had "illegally" given the IVD to the Hoglunds, and had admitted to violating Sears' company policy; and (3) Franks' statement in a meeting with consultants a few weeks later, warning the consultants that they could be terminated for backdating contracts for their own gain, just like the two consultants who had recently been terminated for such misconduct.[2] Pls. Opp. 11:4-13 (Docket No. 31); Franks Dep. 74:16-75:25, Ex. 4 to Adams Decl. (Docket No. 34); Hoffman Dep., Ex. 11, Ex. 2 to Adams Decl.

Plaintiff alleges that Sears' policy of allowing IVDs only to "put back" customers and not to "be-

---

[2] Plaintiff stated in her deposition that her defamation claim was also based on the disclosure of her termination paperwork to the Employment Development Department (EDD) during an appeal hearing for her unemployment benefits. Bartonico Dep. 417:24-420:6. However, plaintiff acknowledges in her opposition that Sears' publication of her termination paperwork during the EDD hearing is absolutely privileged under California Civil Code §47(b). Pls. Opp. 9, fn. 5.

5

back" customers was not strictly adhered to in actual practice and that Hoffman allowed her to give IVDs to customers when it appeared likely that a sale would take place soon after the initial visit. Bartonico Decl. ¶4 (Docket No. 32). Plaintiff asserts that Hoffman instructed her to backdate her contracts to the date of the initial visit in such cases. *Id.* Also, plaintiff alleges that she sought the advice of Maria McCoy ("McCoy"), the office coordinator of the Sacramento district sales office, on how to process the Hoglunds' contract, and was instructed by McCoy to submit an amended lead sheet indicating that the initial visit with the Hoglunds resulted in "Sale" and backdate their contract to the date of the initial visit. *Id.* ¶6; McCoy Dep., Ex. 19, Ex. 3 to Adams Decl. Plaintiff therefore asserts that she gave the Hoglunds the IVD in the good faith belief that such practice was acceptable, rather than in an attempt to manipulate the system for her own gain. *Id.* ¶7. Plaintiff asserts that even though McCoy was not her supervisor, she was in charge of making sure sales paperwork submitted by consultants was in compliance with Sears' company policies and Hoffman authorized her to provide advice and guidance to consultants on acceptable ways to fill out sales paperwork. Pls. Opp. 1:20-2:6; Bartonico Decl. ¶3. Further, plaintiff alleges that when she was confronted by Hoffman and Franks about the Hoglunds' contract, she did not admit to violating the SOP but instead defended her actions, explaining that she considered her actions legitimate because she was simply following McCoy's instructions. Pls. Opp. 7:8-14; Bartonico Decl. ¶6. Based on these factual allegations, plaintiff asserts that she was defamed by the above statements made by Hoffman and Franks which falsely characterized her as having acted dishonestly by manipulating the IVD rules for her own gain.

Sears contends that it is entitled to summary judgment on plaintiff's defamation claim because plaintiff has failed to establish a prima facie case of defamation. Specifically, Sears alleges that plaintiff has not set forth any specific defamatory statements made by Hoffman and Franks to Hibbison, and that any alleged statements made by Hoffman and Franks to Sears' human resources personnel or consultants would be privileged pursuant to California Civil Code §47(c).

///

///

6

### 1. Plaintiff has sufficiently alleged the substance of Hoffman and Franks' defamatory statements

Defamation occurs when a false and unprivileged statement, which has a natural tendency to injure or which causes special damage, is communicated or published to one or more persons who understand its defamatory meaning and its application to the injured party. *See Jackson v. Paramount Pictures Corp.*, 68 Cal.App.4th 10, 26 (Cal. Ct. App. 1998) (citing 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 471, p. 558; *id.*, § 476, ¶. 560-561). "The words constituting a libel or slander must be specifically identified, if not pled verbatim." *Chabra v. S. Monterey County Memorial Hospital, Inc.*, 1994 WL 564566, *6 (N.D.Cal.1994) (citing *Kahn v. Bower*, 232 Cal.App.3d 1599, 1612, fn. 5 (1991)). While the exact words or circumstances need not be stated, the substance of the statement must be alleged. *See Okun v. Superior Court (Maple Properties)*, 29 Cal.3d 442, 458 (1981).

Plaintiff asserts that Hoffman's statement in the termination papers was defamatory in that it falsely accused plaintiff of having "manipulated the system" for her own gain by illegally giving the IVD to the Hoglunds and falsely stated that plaintiff had admitted to the misconduct. Plaintiff also alleges that Hoffman and Franks's statements made during their telephone conversation with Hibbison essentially reflected what was written in the termination papers. Pls. Opp. 9:10-13. Further, plaintiff asserts that by the time Frank made his warning to his consultants about the consequences of manipulating the IVD rules for their own gain, it was already common knowledge among the consultants that plaintiff had recently been terminated. Thus, plaintiff alleges that she was defamed by Franks' statement at the meeting. Pls. Opp. 8:19-25. Sears argues that plaintiff has not offered sufficient evidence in support of her allegations because neither Hibbison, Hoffman, nor Franks could provide specific details of their conversation concerning plaintiff's termination. Defs. Reply 2:10-3:16 (Docket No. 40). However, Sears' arguments goes to the merits of plaintiff's claim, and the Court finds that plaintiff has met its burden of specifying the substance of the allegedly defamatory statements made by Hoffman and Franks.

///

///

**2. Plaintiff raises a genuine issue of material fact as to whether Hoffman and Franks lost their qualified privilege to communicate with interested parties by publishing their statements with malice**

California Civil Code §47(c) provides that "[a] privileged communication is one made: . . . (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested…" It is well established that section 47(c) provides employers with a qualified privilege to discuss concerns regarding employees with other employees in the employer's organization. "Communications . . . . relating to the conduct of an employee have been held to fall squarely within the qualified privilege for communications to interested persons." *Cuenca v. Safeway S.F. Employees Fed Credit Union*, 180 Cal.App.3d 985, 995 (1986). The law presumes that a communication subject to a qualified privilege is made innocently and without malice. *Smith v. Hatch*, 271 Cal.App.2d 39, 47 (1969). To defeat this qualified privilege, a plaintiff must specifically allege malice. *Robomatic, Inc. v. Vetco Offshore*, 225 Cal.App.3d 270, 275-276 (1990) (citing *Williams v. Taylor*, 129 Cal.App.3d 745, 752 (1982)). A general allegation of malice will not suffice; plaintiff must allege detailed facts showing defendant's ill will towards him. *Id.* (citing *Martin v. Kearney*, 51 Cal.App.3d 309, 312 (1975)). "[T]he privilege is lost if the publication is motivated by hatred or ill will toward plaintiff [citations], or by any cause other than the desire to protect the interest for the protection of which the privilege is given." *Cuenca*, 180 Cal.App.3d at 996. Whether the allegedly defamatory statement is privileged involves factual inquiries about the defendant's state of mind. *See Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370 (2001) ("The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights. . . . [M]alice focuses upon the defendant's state of mind, not his or her conduct.") (internal citations and quotations omitted).

Plaintiff does not dispute Sears' assertion that the alleged communications or publications of statements concerning plaintiff's termination was limited to Sears' human resources personnel and consultants, who would clearly qualify as "interested persons" under California Civil Code §47(c). Thus, the communications or publications at issue would be privileged unless plaintiff can show that Hoffman and Franks acted with malice.

8

Plaintiff argues that there is a genuine issue of material fact as to whether Hoffman and Franks acted with malice by publishing statements about plaintiff's termination without having reasonable grounds for belief in the truth of the publication and in reckless disregard of plaintiff's rights. Specifically, plaintiff alleges that Hoffman and Franks told Hibbison that plaintiff admitted to having manipulated the IVD rules even though plaintiff denied this and explained that she was following McCoy's instructions. Plaintiff also notes that Hibbison, as the regional human resources director, usually gets involved in determining whether to discharge an employee, but does not investigate when the employee has already admitted to a violation of a "zero tolerance" policy. Pls. Opp. 5:18-25; Hibbison Dep. 45:10-22, Ex. 5 to Adams Decl. Thus, plaintiff asserts that there is a triable issue as to whether Hoffman and Franks had any reasonable grounds for believing the truth of their statements regarding plaintiff's admission of misconduct. Plaintiff also asserts that there is a triable issue as to whether Hoffman and Franks acted in reckless disregard for plaintiff's rights by failing to verify plaintiff's explanation for her actions by questioning McCoy about her involvement in the backdating of the Hoglund contract, and forestalling the investigation that Hibbison would have conducted. Pls. Opp. 11:17-26.

Sears contends that plaintiff has not alleged sufficient facts to overcome the privilege set forth in California Civil Code §47(c). Specifically, Sears asserts that plaintiff has failed to produce any evidence that Hoffman and Franks entertained serious doubts as to the truth of their publications to permit the conclusion that they acted with actual malice. Sears relies on the undisputed fact that Hoffman discovered that plaintiff had backdated her contract with the Hoglunds and had given them an IVD so that he had legitimate reasons to conclude that plaintiff violated the SOP. Sears also contends that plaintiff cannot rely on her assertion that she was instructed by McCoy to backdate her contract because it is undisputed that McCoy was not plaintiff's supervisor. However, plaintiff does raise triable issues as to whether Hoffman allowed contracts to be backdated in actual practice; whether McCoy was authorized to give advice to consultants on how to process sales contracts; whether plaintiff gave the IVD to the Hoglunds in the good faith belief that this was allowed; and whether Hoffman and Franks published their statements with malice, in reckless disregard of the truth, by ignoring plaintiff's

9

explanation and stating that plaintiff admitted to manipulating the system for her own gain.[3] The common interest privilege under California Civil Code §47(c) is conditional and plaintiff has made a sufficient prima facie showing of malice to preclude summary adjudication. *See Hailstone v. Martinez*, 169 Cal.App.4th 728, 740 (2008).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment on plaintiff's First and Second Causes of Action, and DENIES defendant's motion for summary judgment on plaintiff's Third Cause of Action. (Docket No. 24).

**IT IS SO ORDERED.**

Dated: December 29, 2009

SUSAN ILLSTON
United States District Judge

---

[3] Although plaintiff does not dispute Sears' contention that there is no evidence supporting Hoffman and Franks' alleged malicious motive based on animosity toward plaintiff, plaintiff's complaint appears to allege sufficient facts to raise a triable issue as to whether Hoffman's alleged publications were motivated by hatred or ill will toward plaintiff. Specifically, plaintiff alleges that in February 2006, Hoffman "angrily lambasted her for alleged minor job performance deficiencies," which caused her severe distress and forced her to take medical leave for a month. Plaintiff also alleges that when she returned to work, "Hoffman treated her more adversely than before, including by giving her fewer and less promising sales leads, and criticizing her on minor and pretextual matters." Plaintiff further alleges that "Hoffman's stated reason for terminating Plaintiff was false and pretextual. His true reason for terminating Plaintiff was her female sex." Compl. ¶¶10, 11, 17.